MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael Faillace [MF-8436]
90 Park Avenue, Suite 1700
New York, New York 10016
Telephone:  (212) 786-7368
Facsimile:   (212) 786-7369
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
:
SHYRON BYNOG                                              :        **05 CV 305 (WHP)**
                                                          :        **COMPLAINT**
                    *Plaintiff*,                          :
                                                          :
        -against-                                         :
                                                          :
SL GREEN REALTY CORP.,                                    :
FIRST QUALITY MAINTENANCE, L.P.,                          :
CLASSIC SECURITY, LLC &                                   :        **JURY TRIAL REQUESTED**
LOCAL 32BJ, SERVICE EMPLOYEES                             :        **ECF CASE**
AMERICAN INTERNATIONAL GROUP                              :
                                                          :
                    *Defendants*.                         :
                                                          :
------------------------------------------------------------X

Plaintiff Shyron Bynog, by her attorney, Michael Faillace & Associates, P.C., alleges upon knowledge as to herself and upon information and belief as to all other matters as follows:

### NATURE OF ACTION

1. This action is commenced by Plaintiff pursuant to 29 U.S.C. § 185 as a hybrid claim of breach of contract against her former employer and for breach of the duty of fair representation against her collective bargaining representative.

2. Plaintiff also brings this action under Section 1981 of The Civil Rights Act of 1866, 42 U.S.C. § 1981, the New York State Executive Law §290 *et seq*. (the "Human Rights

Law") and the Administrative Code of the City of New York §8-107 *et seq*. (the "City Law") to remedy discrimination and retaliation on the basis of Plaintiff's race and gender.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction to enforce collective bargaining agreements under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Union's duty of fair representation to Plaintiff is implied under the scheme of the LRMA, 29 U.S.C. § 151 *et seq*.

4. This Court also has subject matter jurisdiction of Plaintiff's claims of discrimination pursuant to 42 U.S.C. § 1981, 28 U.S.C. § 1331, and 29 U.S.C. § 2601, *et seq*. Supplemental jurisdiction over Plaintiff's state and city law claims is conferred by 28 U.S.C. § 1367(a).

5. Venue is appropriate in this Court by virtue of Local 32BJ's principal office maintained in Manhattan pursuant to 29 U.S.C. § 185(c) and as the location where the unlawful employment practices were committed pursuant to 28 U.S.C. §1391(b).

6. Prior to filing this Complaint, Plaintiff served a copy of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York in accordance with N.Y.C. Admin. Code § 8-502(c).

## PARTIES

7. Plaintiff Shyron Bynog ("Bynog") is a female Caucasian individual residing at 140 E. 31st Street, Apartment 3B, New York, New York 10016.

8. Defendant S.L. Green Realty Corp. ("S.L. Green") is, upon information and belief, a corporation existing under Maryland law with its principal place of business at 420 Lexington Avenue, New York, New York 10170. At all times relevant hereto, S.L. Green was engaged in

business as an owner, operator and managing agent of various commercial office buildings in New York City.

9.  Defendant Local 32BJ, Service Employees International Union ("Local 32BJ") is a service union, representing 70,000 cleaners, doormen, porters, maintenance workers, window cleaners, security guards, superintendents, and theater and stadium workers in New York, New Jersey, and Connecticut. Local 32BJ members work in residential apartment buildings, commercial office buildings. Its principal place of business at 101 Avenue of the Americas, New York, New York 10013.

10.  Defendant First Quality Maintenance, L.P. ("FQM") is a New York corporation which maintains its principal place of business at 70 West 36th Street, Suite 301, New York, New York 10018. FQM is a consulting firm that works with landlords to reduce janitorial costs and improve the quality of building maintenance services. It also provides cleaning and maintenance services to building owners and property managers. FQM is owned by Gary Green and employs more than 100 blue workers. Gary Green is the son of Stephen Green.

11.  Defendant Classic Security, LLC ("Classic") staffs security guards and implements security technology in scores of buildings throughout the New York City metropolitan area. Classic maintains its principal place of business at 70 West 36th Street, New York, New York 10018. Gary Michael Green is the Chief Operating Officer of Classic. Classic provides lobby security for S. L. Green.

**FACTUAL ALLEGATIONS**

*Bynog's Employment History*

12.  Plaintiff began working as a doorman for S.L. Green in 1991, after being recommended for the position by Steve Green's wife, Nancy Peck Green. At that time, Steve

Green wanted to hire women to work in the lobby of the building because he thought they might be more conscientious and helpful. Until she left the job in 1996 when Local 32BJ went on strike, Plaintiff had not received a single disciplinary offense.

13. From 1998 to 1999, Plaintiff occasionally worked as a nanny for Steve Green, taking care of his granddaughter.

14. From August 2000 to December 2001, Kate Sherwood of FQM occasionally hired Plaintiff to cover the reception desk and perform general office duties.

*Bynog's Employment at 470 Park Avenue South*

15. In January 2002, Bynog became reemployed by S.L. Green as a concierge and worked at 470 Park Avenue South. In January 2002, S.L. Green hired Plaintiff to perform services as a lobby concierge at a commercial office building located at 470 Park Avenue South, New York, New York (the "Building") which is owned and managed by S.L. Green.

16. S.L. Green, FQM, and Classic jointly controlled the terms, conditions, and privileges of Plaintiff's employment at the Building. In fact, workers could not be distinguished by the uniforms they wore. Although Plaintiff was hired by Defendant S.L. Green, FQM staff informed her that she had to wear a Classic Security uniform like other individuals working at the Building. On the other hand, S.L. Green often required Classic employees to wear its green S.L. Green uniforms, and would assign those individuals wearing the special SL Green jacket to work at the front desk of buildings that needed a doorman replacement.

17. From January 2002 until July 30, 2004, Plaintiff did not receive a single disciplinary offense. She was punctual and performed her job in a professional manner. Plaintiff dutifully followed all guidelines and procedures during her employment. She consistently put

forth the effort and care to ensure that the needs of building tenants were promptly and properly addressed.

18. Due to her longstanding relationship with S.L. Green and FQM, Steve Green and Kate Sherwood trusted and relied upon Plaintiff's observations and comments about the building. As a result, Plaintiff responsibly reported security concerns and improper behavior to management.

19. Plaintiff's diligent attention to her duties, as well as her increased visibility with members of management triggered resentment amongst her co-workers and resulted in harassment. Co-workers continuously made racial and offensive sexual remarks to Plaintiff and threatened her with physical harm. On one occasion, Alberto Cangas, the Night Cleaning Forman, upon the mistaken belief that Plaintiff had reported him for neglecting to clean the lobby, threatened to physically harm Plaintiff.

*Unwelcome Harassment Based on Plaintiff's Race and Gender*

20. In addition to peppering Plaintiff with unwelcome derogatory comments and names based on her race and gender, Classic security officers, through their pervasive intimidation, ridicule, and insults, created a hostile work environment that significantly altered the conditions of Plaintiff's employment.

21. Security officers called and referred to Plaintiff as an "ugly fucking cunt," "white trash," "ignorant white-faced bitch," "Miss Goody Two Shoes" and wrote "bitch" on Plaintiff's log book. In addition, co-workers also threatened to "beat the shit out of [her]," would stare and make faces at her, and threw her possessions in the garbage.

22. Co-workers refused to cooperate with Plaintiff, and deliberately attempted to interfere with Plaintiff's ability to perform her duties. For example, other security officers would deliberately leave the front desk unoccupied while Plaintiff was on her break.

*Defendants Had Knowledge of the Discrimination*

23. As early as January 2002, Plaintiff reported the acts of harassment to management members of S.L. Green, FQM, and Classic. However, Defendants failed to take action to curtail the discrimination, and often told Plaintiff to "ignore it."

24. In March 2003, Plaintiff reported to Fanci Weissman of S.L. Green that she felt uncomfortable with the sexually charged atmosphere of the workplace and sexual comments directed towards Plaintiff by co-workers in the Building. Specifically, Plaintiff informed Weissman that she discovered William Maher, the building superintendent, and other employees watching a hardcore pornographic movie in Maher's office when she entered the locker room on the 18th floor.

25. In a meeting in late September 2003 at FQM, Sherwood, Weissman, and Peter Fusco of Classic accused Plaintiff of not being able to get along with others. Although Plaintiff informed them of the harassment, noting that co-workers had called her names since her first day on the job, Defendants ignored her complaint and instead blamed Plaintiff as the source of the discord. Furthermore, Sherwood instructed Plaintiff to stop recording her complaints in the daily log book, stating that such information could be used as evidence in a lawsuit.

26. In October 2003, Michael Rodriguez of FQM called Plaintiff into a meeting and informed her that if she did not learn how to "get along" with others, there would be serious consequences.

27. From May through July 2004, Plaintiff sent a series of e-mail messages to various members of S.L. Green and Classic, including Weissman, Paul Palagian, the S.L. Green Building Manager, Brian Dooley, Peter Fusco, and Tom Garry. In these e-mail messages, Plaintiff described the derogatory remarks and threats made by her co-workers. On each occasion, she used descriptive subject lines such as "unbridled hostility," "Hostile environment?" and "Hostile Environment. Part II."

28. Defendants failed to investigate these claims, and again blamed Plaintiff for the harassment.

29. In retaliation for her numerous complaints, Defendants terminated Plaintiff's employment on or about August 17, 2004.

*Local 32BJ – S.L. Green Collective Bargaining Agreement*

30. Local 32BJ and S.L. Green are party to a collective bargaining agreement covering the wages, hours and conditions of all of the building service employees, including the building superintendent, assigned by S.L. Green to provide services at the building. At all times relevant hereto Plaintiff was a member in good standing of Local 32BJ.

31. The Local 32BJ – S.L. Green collective bargaining agreement provides that Green may not discharge employees except for "just cause." Said agreement also provides that any disputes arising thereunder, including the alleged discharge of the employees without just cause, shall be resolved through a contractual grievance and arbitration provision culminating with an arbitration procedure administered by the "Office of the Contract Arbitrator."

32. During her tenure at the building, Plaintiff made frequent complaints to S.L. Green management about Maher. Specifically, Plaintiff reported to management that Maher was habitually intoxicated on the job and as a result was unable to perform his duties or properly

manage the building's staff. Plaintiff also reported sexual comments made to her by Maher and other members of the building staff.

33. As noted herein, Maher is a member of Local 32BJ and is a member of the collective bargaining unit represented by Local 32BJ at the building.

34. Plaintiff's complaints about Maher became known to the representatives of Local 32BJ assigned to represent employees at the building and were not well received.

35. Local 32BJ aggressively represented Maher's interests with S.L. Green, and as a result of Local 32BJ's pressure Maher was able to save his job despite Plaintiff's reports about his drunkenness at work.

36. On or about August 17, 2004, S.L. Green terminated Plaintiff's employment without any cause and despite her previous unblemished work record.

37. Plaintiff promptly grieved her termination.

38. Local 32BJ initially advised Plaintiff that it would not pursue her grievance to arbitration.

39. Plaintiff subsequently appealed Local 32BJ's decision not to pursue her grievance to arbitration to the Union's "Appeal Board." In support of the appeal, Plaintiff submitted a letter from her attorney detailing her prior complaints about Maher as well as her contention that her termination was without cause and in retaliation for her complaints about Maher as well as sexual harassment. A copy of counsel's letter is annexed hereto as Exhibit "A."

40. Local 32BJ was unable to fairly assess Plaintiff's grievance or represent her interests in connection with such grievance because of a serious and substantial conflict of interest. Local 32BJ did not pursue Plaintiff's clearly meritorious grievance because arbitrating the claim would clearly have required the Union to adduce testimony about Maher's frequent

intoxication on the job as well as Plaintiff's complaints to management concerning Maher. Such testimony, if offered in arbitration, would certainly have caused S.L. Green to terminate Maher's employment.

41.     Local 32BJ did not pursue Plaintiff's grievance to arbitration in order to protect Maher and because its other members employed at the building did not want to see Plaintiff (who previously made complaints about many of them) reinstated to her job.

## FIRST CAUSE OF ACTION
**Labor Management Relations Act – Breach of Collective Bargaining Agreement**

42.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

43.     S.L. Green is an employer within the meaning of the LMRA, 29 U.S.C. § 141 *et seq*.

44.     The actions of S.L. Green described herein and, in particular, its termination of Plaintiff on or about August 17, 2004 constitute a breach of the collective bargaining agreement in effect between Local 32BJ and Green.

45.     Plaintiff has sustained damages as a result of S.L. Green's breach of contract.

## SECOND CAUSE OF ACTION
**Labor Management Relations Act – Breach of Duty of Fair Representation**

46.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

47.     Local 32BJ is a labor organization within the meaning of 29 U.S.C. § 141 *et seq*.

48.     The acts and omissions of Local 32BJ described herein, including its failure to pursue her grievance to arbitration, constitute a willful breach by Local 32BJ of its duty of fair representation owned to Plaintiff.

49.     Plaintiff has been damaged as a result of Local 32BJ's willful breach of its duty of fair representation.

50. Plaintiff has been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### The Civil Rights Act of 1866, 42 U.S.C. § 1981

51. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

52. Defendants have discriminated against Plaintiff by denying her the same rights enjoyed by Caucasian employees with regard to the enjoyment of all benefits, privileges, terms and conditions of that relationship.

53. Defendants' threats, derogatory remarks, and harassment on the basis of Plaintiff's race was severe and pervasive and created a hostile or abusive working environment Plaintiff reported acts of harassment to Defendants on numerous occasions, but Defendants permitted the harassment to continue.

54. Defendants also retaliated against Plaintiff by taking numerous adverse actions against Plaintiff after she engaged in the protected activity of reporting the harassment.

55. Defendants' conduct has been intentional, deliberate, and willful, conducted in callous disregard of Plaintiff's rights.

56. Plaintiff has been damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### New York State Executive Law, 15 N.Y. Exec. Law §§ 291 *et seq.*

57. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

58. Defendants are employers within the meaning of the New York State Human Rights Law.

59. In violation of the New York State Human Rights Law, Defendants intentionally discriminated and retaliated against Plaintiff by subjecting her to disparate treatment on account of her race and gender.

60. Defendants' threats, derogatory remarks, and harassment on the basis of Plaintiff's race were severe and pervasive, thus creating a hostile or abusive working environment. Plaintiff reported acts of harassment to Defendants on numerous occasions, but Defendants permitted the harassment to continue.

61. Defendants' threats, derogatory remarks, and harassment on the basis of Plaintiff's race and gender created a hostile work environment that significantly altered the terms and conditions of her employment. Plaintiff reported such acts of harassment to Defendants on numerous occasions, but Defendants permitted the harassment to continue.

62. Defendants also retaliated against Plaintiff by taking numerous adverse actions against Plaintiff after she engaged in the protected activity of reporting the harassment.

63. The acts and omissions alleged herein were reckless, malicious, and made with callous disregard and deliberate indifference to Plaintiff's rights.

64. As a result of Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other reemployment benefits, and has suffered other monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress, and humiliation.

65. Plaintiff has been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### The New York City Human Rights Law

66. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

67. Defendants are employers within the meaning of the New York City Human Rights Law.

68. In violation of the New York City Human Rights Law, Defendants intentionally discriminated and retaliated against Plaintiff by subjecting her to disparate treatment on account of her race and gender.

69. Defendants' threats, derogatory remarks, and harassment on the basis of Plaintiff's race and gender created a hostile work environment that significantly altered the terms and conditions of her employment. Plaintiff reported such acts of harassment to Defendants on numerous occasions, but Defendants permitted the harassment to continue.

70. Defendants also retaliated against Plaintiff by taking numerous adverse actions against Plaintiff after she engaged in the protected activity of reporting the harassment.

71. The acts and omissions alleged herein were reckless, malicious, and made with callous disregard and deliberate indifference to Plaintiffs' rights.

72. As a result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other reemployment benefits, and has suffered other monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress, and humiliation.

73. Plaintiff has been damaged in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff hereby demands judgment against defendants, jointly and severally, on the first and second causes of action herein, respectfully requests that this Court enter judgment in his favor and against Defendant, and to provide the following relief:

1. An order reinstating Plaintiff to her former position with S.L. Green with full retroactive seniority;

2. Monetary damages in an amount to be established at trial including all wage and benefits lost by Plaintiff as a result of her termination by S.L. Green on August 17, 2004; and

3. Making Plaintiffs whole for all earnings she would have received but for Defendants' discriminatory and unlawful treatment, including, but not limited to, wages, health insurance and other fringe benefits, bonuses, pension, back pay, front pay, and other lost employment benefits;

4. Awarding Plaintiff compensatory damages in an amount to be proven at trial;

5. Awarding Plaintiff punitive damages in an amount sufficient to punish and deter Defendants;

6. An award of the attorney fees incurred by Plaintiff in this action together with the costs and disbursements of this action and such further relief as this Court deems appropriate.

7. Entering such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all claims so triable.

Dated: New York, New York
January 13, 2005

Respectfully submitted,

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:_____
Michael Faillace [MF-8436]
90 Park Avenue, Suite 1700
New York, New York 10016
Telephone:  (212) 786-7368
Facsimile:  (212) 786-7369
*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE BY HAND

STATE OF NEW YORK      )
                                              )       ss.:
COUNTY OF NEW YORK   )

1.   I am not a party to this action, am over 18 years of age and employed by MICHAEL FAILLACE & ASSOCIATES, P.C., 90 Park Avenue, Suite 1700, New York, New York 10016.

2.   I hereby certify that I caused to be served a true and correct copy of the Complaint on this 13th day of January 2005, on the following:

>  New York City Commission of Human Rights
>  40 Rector Street, 10th Floor
>  New York, New York 10006
>
>  Corporation Counsel of the City of New York
>  100 Church Street, 4th Floor
>  New York, New York 10007

3.   I made such service by personally delivering a true copy of the aforementioned document to _____, at the above stated address, who stated that he/she was authorized to accept service on behalf of the New York City Commission of Human Rights.

4.   I made such service by personally delivering a true copy of the aforementioned document to _____ at the above stated address, who stated that he/she was authorized to accept service on behalf of the Corporation Counsel of the City of New York.

_____
Daniel Fojas